UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KENNETH MACIORA,<br><br>Plaintiff,<br><br>v.<br><br>PMB HELIN DONOVAN,<br>CHRISTIE CARDWELL<br>and<br>DONALD MCPHEE<br><br>Defendants, | Civil Action No.<br><br>**16-CV-00295** RSM<br><br>COMPLAINT<br>SECURITIES<br>FRAUD<br>NEGLIGENCE<br><br>Jury Trial Demanded |

Kenneth Maciora (Plaintiff) brings this complaint and alleges multiple claims of securities fraud and negligence against PMB Helin Donovan, Christie Cardwell and Donald McPhee:

1. The Defendants chose to walk down an obvious path of peril by conspiring with MyECheck, a small public company to cause false accounting records to be filed with the United States Securities and Exchange Commission. This Plaintiff relied on the fact that the Defendants audited the financial statements based on GAAP and GAAS accounting standards and the standards set by the Public Company Accounting Oversight Board (PCAOB). The Plaintiff also relied on the belief that the Defendants would insist that an issuer corrects their financial statements before the Defendants would issue an audit opinion and continue to keep an audit opinion filed with the SEC concluding that the

KENNETH MACIORA V PMB HELIN DONOVAN, CHRISTIE CARDWELL AND DONALD MCPHEE – PLAINTIFF'S ORIGINAL COMPLAINT FOR SECURITIES FRAUD AND NEGLIGENCE - 1

1. financial statements of MyECheck were a fair representation of the company's financial health when the Defendants had to know or were reckless in not knowing that wasn't true.

2. Defendant PMB Helin Donovan and certain partners including the Managing Partner ("head partner") permitted MyECheck, a small publicly-traded company to operate a safe haven to manipulate their accounting records and decrease losses by millions of dollars while conspiring with MyECheck to deny certain shareholders their most basic rights as a shareholder by falsifying the first audit opinion of MyECheck and continuing to falsify the first audit opinion of MyECheck which was filed with the United States and Securities and Exchange Commission until this day. The fraudulent scheme created an avenue for MyECheck to essentially expunge shareholder records, decrease losses by tens of millions of dollars, and to deny shareholders including this plaintiff their rights as a shareholder. The fraudulent scheme also allowed MyECheck to conspire with MyECheck's officers and directors to effect illegal distributions of unregistered stock knowing that the financial statements were not accurate. As a result, third parties relied on Safe Harbors to the registration provisions of the Securities Act when those Safe Harbors should not have been available. In an erroneous account that almost can't be believed, the accumulated deficit in the Stockholder's Equity Section of the company's balance sheet is understated by approximately $180,000,000 (100 hundred and eighty million dollars). All of these actions have directly caused significant losses in the value of the Plaintiff's stock holdings of MyECheck.

3. The Defendants were not the watchdogs on behalf of shareholders and prospective investors that the securities laws and the basic rules of the accounting profession required them to be. Instead of putting a stop to MyECheck's fraudulent conduct, the Defendants themselves engaged in fraud by continuing to misrepresent to investors including this Plaintiff, inter alia, that MyECheck's consolidated financial statements for the years ended December 2013 and December 2014 presented fairly in all material respects, the financial

KENNETH MACIORA V PMB HELIN DONOVAN, CHRISTIE CARDWELL AND DONALD MCPHEE – PLAINTIFF'S ORIGINAL COMPLAINT FOR SECURITIES FRAUD AND NEGLIGENCE - 2

position of MyECheck. The Defendants signed the auditor opinion on April 7, 2015. On August 26, 2015, Defendant Chris Cardwell was told by a former director of MyECheck through an email and a phone conversation that he came across errors and omissions in the Form 10 that was filed with the United States and Securities and he attached documented evidence which depicted "material omissions" as part of his informative email. The Defendants chose to completely ignore not only Generally Accepted Accounting Principles but completely turned a blind eye on what any first year accounting student would have recognized as a blatant, purposeful and calculated error. In fact, most first year accounting students would have concluded that there was a high probability that MyECheck was engaging in fraud and the Defendants did nothing to stop it or correct it.

4. The Defendant's also completely abandoned their responsibility to evaluate the incoming trial balances from 2012 in order to perform the audits for the calendar year 2013 and 2014. For example and in Item 12 of the Form 10 that was filed with the United States Securities and Exchange Commission, MyECheck valued 3,000,000,000 shares that were given to the Chairman and CEO of the Company in 2012 at $30,000 (thirty thousand U.S. dollars) when the value of the stock when issued was estimated at a minimum of $180,000,000. MyECheck actually valued the stock at PAR but there is no <u>Generally Accepted Accounting Principle</u> which would allow any accountant in America to value the stock at $30,000 (thirty thousand U.S. dollars) when the market value was $180,000,000.

5. Rather than refusing to sign an audition opinion which would have put at risk a lucrative relationship with a premier public company client, the Defendants repudiated their responsibility to challenge what was obviously multiple improper accounting entries which resulted in fictitious financial statements that were filed and accepted by the SEC as a "fair representation of the company's financial position". Defendant Cardwell incredulously told the former director that his accusations "**<u>were between him and the</u>**

KENNETH MACIORA V PMB HELIN DONOVAN, CHRISTIE CARDWELL AND DONALD MCPHEE – PLAINTIFF'S ORIGINAL COMPLAINT FOR SECURITIES FRAUD AND NEGLIGENCE - 3

<u>company</u>".

## JURISDICTION AND VENUE

6. Jurisdiction is conferred by §27 of the Securities Act of 1934 and 28 U.S. Code 1332. The claims asserted herein arise under §17, §10 and §13 of the Exchange Act.

7. Venue is proper in this district court pursuant to §27 of the 1934 Act. Most of the accounting work and the audit work product related to the MyECheck audit was performed and created from PMB Helin Donovan's office in Seattle, Washington located at 3161 Elliott Avenue #350, Seattle, WA 98121.

## DEFENDANTS

8. **Defendant PMB Helin Donovan,** is a Texas corporation maintaining their headquarters in Austin, Texas. PMB Helin Donovan is a PCAOB-registered public accounting firm that employs hundreds of employees. PMB Helin Donovan has offices throughout the United States in Austin Texas, Dallas Texas, Houston Texas, San Francisco, California and Seattle, Washington. PMB Helin Donovan maintains the office in Seattle, Washington as of the date of this filing and most, if not all of the audit work was prepared by Defendant Chris Cardwell who worked out of the Seattle Office. PMB Helin Donovan's website describes the company as a "PCAOB registered and inspected firm with a diverse client base composed of closely held businesses, publicly traded companies, non-profit organizations, government agencies, hedge and investment fund entities, broker dealers and individuals."

KENNETH MACIORA V PMB HELIN DONOVAN, CHRISTIE CARDWELL AND DONALD MCPHEE – PLAINTIFF'S ORIGINAL COMPLAINT FOR SECURITIES FRAUD AND NEGLIGENCE - 4

9. **Defendant Christie Cardwell (a/k/a Chris Cardwell),** is an Audit Partner with PMB Helin Donovan. Her experience includes five years with BDO Seidman in Spokane, Washington, and ten years with a local firm that specialized in publicly traded companies. Defendant Cardwell has significant experience in the audit of small to medium sized public companies, both domestic and foreign. Her industry specialties are in biotech, internet sales, software development, manufacturing and distribution, and extraction and renewable energy industries. Defendant Cardwell has been a CPA since 1998.

10. **Defendant Donald McPhee,** is the managing partner with PMB Helin Donovan. Mr. McPhee has over 20 years of audit experience including 7 years with KPMG. Mr. McPhee has been a CPA since 1990. He is a CPA in both Texas as well as Illinois. He has experience with a diverse client base including technology, manufacturing and state and local governments.

## THE SCHEME

11. United States securities markets rely on the integrity of auditors to insure that financial statements are accurate, meaningful and truthful.

12. One of the main responsibilities of the external audit function is to monitor the performance of an entity's internal controls. It is a responsibility of the external auditor (the Defendants) to evaluate the internal controls. It appears none of that was done. For example, MyECheck loaned the CEO of the company $50,000 to buy a "personal car" which was an illegal act and a blatant violation of the Sarbanes Oxley Act of 2002. There was zero reference to this in the notes to the company's financial statements which would have been required and should have been required by the company's internal auditors.

KENNETH MACIORA V PMB HELIN DONOVAN, CHRISTIE CARDWELL AND DONALD MCPHEE – PLAINTIFF'S ORIGINAL COMPLAINT FOR SECURITIES FRAUD AND NEGLIGENCE - 5

13. Another responsibility of the external auditor is to give an opinion on whether a public company's financial statements are fairly and accurately presented based on Generally Accepted Accounting Principles. It appears that the Defendant's knowingly failed in this responsibility.

14. Public auditors fail in their duties and commit fraud when they completely ignore what any reasonable accountant or auditor would conclude is fraud or an absurd mistake in the preparation of the financial statements of a public company and make a public statement to the financial markets that the financial statements represented fairly in all material aspects the financial condition of MyECheck. This is the DNA of the responsibility of a public company auditor and it is required by the standards of the accounting profession and the Public Company Accounting Oversight Board.

15. For at least the period covering the year-end financial statements of MyECheck ended December 31, 2014, Defendant's PMB Helin Donovan, Chris Cardwell and Donald McPhee abandoned their obligation to determine whether the financial statements of MyECheck were fairly stated and prepared according to Generally Accepted Accounting Principles which was their main responsibility as an auditor. Instead, the Defendant's chose to completely abandon the most basic responsibilities of a public company auditor and "directly" caused a false audit opinion letter to be filed with the United States Securities and Exchange Commission.

16. When the Defendants were notified through an email with 2 attached employment agreements by "a former director" of MyECheck that there were material omissions in MyECheck's Form 10 that was filed with the Securities and Exchange Commission which included the audited financials performed by the Defendants, the Defendants could have immediately contacted MyECheck and told the public company that the audit opinion was being pulled and that the financial statements needed to be corrected in order for the audit

KENNETH MACIORA V PMB HELIN DONOVAN, CHRISTIE CARDWELL AND DONALD MCPHEE – PLAINTIFF'S ORIGINAL COMPLAINT FOR SECURITIES FRAUD AND NEGLIGENCE - 6

opinion letter to be worth more than the paper it was printed on. Even if MyECheck refused to cooperate, this could have easily been completed by the Defendants simply contacting the Securities and Exchange Commission and telling the Commission that the audit opinion can't be relied upon based on new information.

17. Instead, Defendant's PMB Helin Donovan, Donald McPhee and Chris Cardwell chose to do nothing.

18. On October 22, 2015, Plaintiff Kenneth Maciora emailed a 10 page document to Defendant Chris Cardwell which included 3 Exhibits which at the very least should have raised serious questions regarding the accuracy of MyECheck's financial statements and conclusion of the audit opinion.  The Defendants could have immediately contacted MyECheck and told the public company that the audit opinion was being pulled and that the financial statements needed to be corrected in order for the audit opinion letter to be worth more than the paper it was printed on. In other words, the audit opinion was baseless and meritless and should not have been filed and continued to be filed with the United States and Securities and Exchange Commission. Even if MyECheck refused to cooperate, this could have easily been completed by the Defendants simply contacting the Securities and Exchange Commission and telling the Commission that the audit opinion can't be relied upon based on new information.

19. Instead, Defendant's PMB Helin Donovan, Donald McPhee and Chris Cardwell chose to do nothing. In fact, the Defendants never contacted Kenneth Maciora to inquire about what the Plaintiff was alleging. In fact, they ignored the burning red flags.

20. On November 23, 2015, Plaintiff Kenneth Maciora sent a certified letter to Defendant Donald McPhee which at the very least should have raised serious questions regarding the accuracy of MyECheck's financial statements and accuracy of the audit opinion. The

KENNETH MACIORA V PMB HELIN DONOVAN, CHRISTIE CARDWELL AND DONALD MCPHEE – PLAINTIFF'S ORIGINAL COMPLAINT FOR SECURITIES FRAUD AND NEGLIGENCE - 7

Defendants could have immediately contacted MyECheck and told the public company that the audit opinion was being pulled and that the financial statements needed to be corrected in order for the audit opinion letter to be worth more than the paper it was printed on. In other words, the audit opinion was baseless and meritless and should not have been filed and continued to be filed with the United States and Securities and Exchange Commission. Even if MyECheck refused to cooperate, this could have easily been completed by the Defendants simply contacting the Securities and Exchange Commission and telling the Commission that the audit opinion can't be relied upon based on new information.

21. Instead, Defendant's PMB Helin Donovan, Donald McPhee and Chris Cardwell chose to do nothing. In fact, the Defendants never contacted Kenneth Maciora to inquire about what the Plaintiff was alleging. In fact, they ignored the burning red flags.

22. By virtue of the evidence that was placed in front of the Defendants on August 26, 2015 and October 22, 2015 and November 23, 2015, the Defendants should have realized or were reckless in not knowing that MyECheck's expenses were understated in an amount well over $1 million dollars which was very material for a company that had little or no revenues. In addition, additional paid-in capital accounts were understated by tens of millions of dollars. In addition, the amount of shares outstanding was understated by hundreds of millions of shares. The Defendants could have pulled their audit opinion letter by simply contacting the Securities and Exchange Commission and telling the Commission that the audit opinion can't be relied upon based on new information which would have redacted their opinion that the financial statements of MyECheck were a fair representation of the financial position and accounts of MyECheck.

KENNETH MACIORA V PMB HELIN DONOVAN, CHRISTIE CARDWELL AND DONALD MCPHEE – PLAINTIFF'S ORIGINAL COMPLAINT FOR SECURITIES FRAUD AND NEGLIGENCE - 8

23. Instead, Defendant's PMB Helin Donovan, Donald McPhee and Chris Cardwell chose to do nothing. In fact, they ignored the burning red flags.

24. The Defendants should have realized or were reckless in not knowing that stockholder's equity section of MyECheck's balance sheet had a material error in the additional paid in capital account of well over $100,000,000. The Defendants could have pulled their audit opinion letter by simply contacting the Securities and Exchange Commission and telling the Commission that the audit opinion can't be relied upon based on new information which would have forced MyECheck to correct their own accounting records if they wanted their Form 10 to remain effective with the United States Securities and Exchange Commission.

25. Instead, Defendant's PMB Helin Donovan, Donald McPhee and Chris Cardwell chose to do nothing. In fact, they ignored the burning red flags.

26. Public auditors also have a responsibility to evaluate trial balances. Trial balances are balances of accounts such as cash, interest expense and salary expense which are carried over from one accounting period to another. These accounting balances are essential to the accuracy of an audit. Without the evaluation of trial balances, the result of the audit is "junk in – junk out" which is exactly what happened when the Defendants audited the financial books and records of MyECheck. For example and in Item 12 of the Form 10 that was filed with the United States Securities and Exchange Commission, MyECheck valued 3,000,000,000 shares that were given to the Chairman and CEO of the Company in 2012 at $30,000 (thirty thousand U.S. dollars) when the value of the stock when issued was estimated at a minimum of $180,000,000. MyECheck actually valued the stock at PAR but there is no <u>Generally Accepted Accounting Principle</u> which would allow any accountant in

KENNETH MACIORA V PMB HELIN DONOVAN, CHRISTIE CARDWELL AND DONALD MCPHEE – PLAINTIFF'S ORIGINAL COMPLAINT FOR SECURITIES FRAUD AND NEGLIGENCE - 9

America to value the stock at $30,000 (thirty thousand U.S. dollars) when the market value was $180,000,000.

# THE FRAUDALENT SCHEME

**A. The Defendant's Conspired with MyECheck and the Transfer Agent to Deny the Plaintiff and Multiple Shareholders their Rights to a Stock Certificate and Inclusion on the Shareholder Registrar**

27. In October 2015 and November 2015, the Plaintiff contacted the Defendants in this case and respectfully requested that the Defendants cause the Form 10 that was filed with the United Securities and Exchange Commission to be amended. The Defendants could have easily effectuated this amendment by contacting the United Securities and Exchange Commission and telling the Commission that errors were discovered in the financial statements that were filed as part of the Form 10 of MyECheck. The Plaintiff asked the Defendant, inter alia, to amend the notes to the financial statements so that the notes would include reference to the employee that the Plaintiff purchased his stock from.

28. Plaintiff Kenneth Maciora purchased 66,666,666 common stock shares of MyECheck as a result of a stock purchase agreement with Rod Zalunardo who was a former employee of MyECheck. Since October 2015, Plaintiff Kenneth Maciora has repeatedly asked the transfer agent of MyECheck to print his stock certificate and include him on the Shareholder Registrar. As a result of the transfer agent's refusal to follow the law and a result of the Defendant's failure to properly create notes to the financial statement which would have included the stock owned by Rod Zalunardo as a result of his employment in the financial notes to the financial statements, the transfer agent has refused to print the stock certificate representing the shares owned by Kenneth Maciora. In fact, Kenneth Maciora emailed Defendant Chris Cardwell on October 22, 2005 and asked the Defendant

KENNETH MACIORA V PMB HELIN DONOVAN, CHRISTIE CARDWELL AND DONALD MCPHEE – PLAINTIFF'S ORIGINAL COMPLAINT FOR SECURITIES FRAUD AND NEGLIGENCE - 10

to correct the public record. The Defendants knew that shareholder records were not accurate. As a result of the scheme and the continued scheme, the transfer agent refused to follow the law and has argued to a Texas court that the Plaintiff doesn't own stock and actually owns a payable because the financial records that were audited by the defendants are a mess. As a direct result of the financial statements not being accurate including an absence of required notes to the financial statements, the Plaintiff has been unable to obtain a stock certificate from the transfer agent as a result of the false books and records conspired by MyECheck, the transfer agent and the Defendants.

29. Defendants have had over 6 months to correct the record and chose to do nothing.

**B. The Defendants Conspired with and Aided MyECheck to Effect Massive Sales of Unregistered Stock**

30. Rule 144 is a Safe Harbor to the registration provisions of the Securities Act of 1933. Regardless of what exchange you trade on including even the New York Stock Exchange, the Rule 144 Safe Harbor can't be relied upon if current information is not available. In the context and in the literal meaning of current information which is a requirement to invoke the Safe Harbor of Rule 144, current information means accurate information. Since August 26, 2015, PMB Helin Donovan had to know that there was a high likelihood that current and or accurate information regarding MyECheck was not being made available to the investment public. The Defendants knew that the financial statements were not accurate. As a result of the sales of millions of shares of unregistered stock, the Plaintiff's stock has decreased in value.

31. Defendants have had over 6 months to correct the public and chose to do nothing.

KENNETH MACIORA V PMB HELIN DONOVAN, CHRISTIE CARDWELL AND DONALD MCPHEE – PLAINTIFF'S ORIGINAL COMPLAINT FOR SECURITIES FRAUD AND NEGLIGENCE - 11

**C. The Defendants Conspired with MyECheck to Falsely Understate Expenses for the Period Ended December 31, 2014**

32. In the August 22, 2015 email from MyECheck's former Director, the Defendants received 2 employment agreements in which 2 employees were to earn an aggregate of 600,000,000 shares of MyECheck over a 12 month period. The Defendants had to know that they were presented with clear evidence that would allow any first year accounting student to conclude that the compensation expense was accruing and had to be realized whether it was on a monthly basis or a quarterly basis. Instead, the Defendants conspired with MyECheck to understate expenses by at least $5,000,000 for the period ended December 31, 2014. The Defendants knew, or were reckless in not knowing that the expenses were understated by millions of dollars.

33. Defendants have had over 6 months to correct the public and chose to do nothing.

**D. The Defendants Conspired with MyECheck and the Transfer Agent to Falsely Understate the Amount of Shares Outstanding for the Period Ended December 31, 2014**

34. In the August 22, 2015 email from MyECheck's former Director, the Defendants received 2 employment agreements in which 2 employees were to earn an aggregate of 600,000,000 shares of MyECheck over a 12 month period. The Defendants knew as would any first year accounting student that the vested stock earned as a result of the employment agreements had to be reflected on the balance sheet of MyECheck in the Stockholders Equity Section.

35. Defendants have had over 6 months to correct the public and chose to do nothing.

KENNETH MACIORA V PMB HELIN DONOVAN, CHRISTIE CARDWELL AND DONALD MCPHEE – PLAINTIFF'S ORIGINAL COMPLAINT FOR SECURITIES FRAUD AND NEGLIGENCE - 12

# FIRST CLAIM

**Violations of the Securities Act and Sections 17 (a) and Section 10(b) and Rule 10b-5 of the Exchange Act**

36. Paragraphs 1 through 35 are hereby re-alleged and incorporated herein by reference as if set forth fully. Section 10(b) of the Securities Act of 1934 and Rule 10b-5 promulgated thereunder prohibit (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact or omitting to state material facts necessary to make the statements made not misleading; and (c) engaging in acts, practices, and a course of business which operates or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.

37. The Defendants prepared audit reports that they knew would be filed with the United States Securities and Exchange Commission. The Defendants represented that they conducted their audits within the standards of the Public Company Accounting Oversight Board. The Defendants also knew that their premier responsibility in performing the audit was to obtain reasonable assurance that the financial statements were free of material misstatement. The audit opinion concluded that the consolidated financial statements presented fairly in all material aspects the financial position of MyECheck. These statements and representations were materially false and failed to disclose information that would have made the statements of the Defendants true.

38. The Defendants violated 17(a) of the Securities Act of 1933 by creating an opinion that concluded that the financial statements of MyECheck were free of material omissions. The Defendants knew, or were reckless in not knowing that the financial statements of MyECheck were highly inaccurate and did not even touch upon the word accuracy as they were represented to the investment public.

KENNETH MACIORA V PMB HELIN DONOVAN, CHRISTIE CARDWELL AND DONALD MCPHEE – PLAINTIFF'S ORIGINAL COMPLAINT FOR SECURITIES FRAUD AND NEGLIGENCE - 13

## SECOND CLAIM

**Aiding and Abetting MyECheck's Violations of Section 10(b) and Rule 10b-5 of the Securities Act of 1934**

39. Paragraphs 1 through 38 are hereby re-alleged and incorporated herein by reference as if set forth fully.

40. The Defendants were responsible for auditing the financial records and statements of MyECheck. They prepared audit reports that they knew would be part of the Form 10 that was being filed with the United States and Securities and Exchange Commission. The audit opinion of the Defendants was a required part of the Form 10 because a Form 10 can't be filed without audited statements. The Defendant's audit and audit opinion aided and abetted MyECheck in defrauding the public by allowing MyECheck to use the Defendant's audit opinion letter to represent that the financial statements were a fair representation of the financial health of MyECheck. The Defendants knew or were reckless in not knowing that the audit opinion and the statements and representations that the financial statements were a fair representation of the actual financial statements of MyECheck had that they been prepared using Generally Accepted Accounting Principles were all materially false.

41. By reasons of the foregoing, the Defendants aided and abetted MyECheck's violations of Sections 10(b) and Rule 10b-5 of the Securities Act of 1934.

## THIRD CLAIM

**Violation of Section 10(a) of the Securities Act of 1934**

KENNETH MACIORA V PMB HELIN DONOVAN, CHRISTIE CARDWELL AND DONALD MCPHEE – PLAINTIFF'S ORIGINAL COMPLAINT FOR SECURITIES FRAUD AND NEGLIGENCE - 14

42. Paragraphs 1 through 41 are hereby re-alleged and incorporated by reference.

43. Section 10A of the Exchange Act requires a public accountant conducting an audit of a public company such as MyECheck to: (i) determine whether it is likely that an illegal act occurred and, if so; (ii) determine what the possible effect of the illegal act is on the financial statements of the issuer; and (iii) if the illegal act is not clearly inconsequential, inform the appropriate level of management and assure that the Audit Committee or the Chief Financial Officer of the client is adequately informed about the illegal act detected. If neither management nor the Audit Committee takes timely and appropriate remedial action in response to the auditor's report, the auditor is obliged to take further steps, including reporting the likely illegal act to the Commission.

44. During the time that the Defendants audited the financial statements for years ended December 31, 2013 and December 31, 2014 and through the date of this lawsuit the Defendants knew or were reckless in not knowing that MyECheck was filing quarterly and year-end financial reports with the United States Securities and Exchange Commission and that these reports that were being distributed to the investment public contained material misrepresentations. The Defendants did not report these likely violations to the MyECheck Audit Board or did not take the necessary steps as required by the statute when MyECheck's officers and its Board of Directors did not correct the violations.

45. By reasons of the foregoing, the Defendants violated Section 10(a) of the Securities Act of 1934

## FOURTH CLAIM

**Aiding and Abetting Violations of Section 13(a) of the Exchange Act and Exchange Act Rules 13a-1, 13a-13, and 12b-20**

KENNETH MACIORA V PMB HELIN DONOVAN, CHRISTIE CARDWELL AND DONALD MCPHEE – PLAINTIFF'S ORIGINAL COMPLAINT FOR SECURITIES FRAUD AND NEGLIGENCE - 15

46. Paragraphs 1 through 45 are hereby re-alleged and incorporated herein by reference as if set forth fully.

47. Section 13(a) of the Exchange Act and Rules 13a-1 and 13a-13 thereunder require issuers of registered securities to file with the Commission factually accurate annual and quarterly reports. Exchange Act Rule 12b-20 provides that in addition to the information expressly required to be included in a statement or report, there shall be added such further material information, if any, as may be necessary to make the required statements, in the light of the circumstances under which they are made not misleading.

48. As a result of the accounting methods and devices employed by the Defendants, the Defendants aided and abetted MyECheck in violating Section 13(a) of the Securities Act of 1934 and Exchange Act Rules 13a-1, 13a-13, and 12b-20.

## FIFTH CLAIM

**Aiding and Abetting Violations of Section 13(b) of the Securities Act of 1934 and Securities Act Rule 13b2-1**

49. Paragraphs 1 through 48 are hereby re-alleged and incorporated herein by reference as if set forth fully.

50. Section 13(b)(2)(A) of the Securities Act of 1934 requires that issuers make and keep books, records, and accounts which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of assets of the issuer. Section 13(b)(2)(B) of the Securities Act of 1934 requires, among other things, that issuers maintain a system of internal accounting controls that permit the preparation of financial statements in conformity with GAAP. Securities Act Rule 13b2-1 prohibits any person from directly or indirectly,

falsifying or causing to be falsified, an issuer's books and records.

51. As a result of the material misstatements and omissions, the defendants aided and abetted MyECheck in violating Sections 13(b)(2)(A) and 13(b)(2)(B) of the Securities Act of 1934 and Exchange Act Rule 13b2-1.

## SIXTH CLAIM

### Negligence

52. Paragraphs 1 through 51 are hereby re-alleged and incorporated herein by reference as if set forth fully.

53. The Defendants owed a duty of care to the Plaintiff in performing the audit to review MyECheck's policies in expensing stock (debit) and crediting additional paid in capital since these accounts had an overwhelming effect on the financial statements of MyECheck that the Defendants were auditing.

54. The Defendants breached that duty of care by not reviewing the incoming trial balances that they received in order to conduct the audits for the periods of 2013 and 2014. For example, additional Paid-in Capital accounts were off by tens of millions of dollars on the trial balances that the defendants received and they performed little or no due diligence to test these trial balances. A first year accounting student could have told the Defendants that there would be no accounting theory which would allow a company to expense an issuance of stock based on Par value when Par value was not in the same universe of the price of shares at the time of issuance.

55. Another example of that breach of the duty of care would be the complete failure to not affect hundreds of millions of shares that were issued in 2014 to be included and or reflected on the financial statements of MyECheck for 2014 regardless of whether a stock certificate is printed. A first year accounting student could have told the Defendants that the accounting entry would have been guided by the words of the contract and not by the complete failure of the transfer agent and the company to print a stock certificate.

56. The Defendant's negligence harmed the Plaintiff by aiding and abetting the company in filing false financial statements with the United Securities and Exchange Commission which created an atmosphere in which the public company failed to print stock certificated representing hundreds of millions of shares. In fact, 66,666,666 of these shares were shares that the Plaintiff purchased.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kenneth Maciora respectfully prays and requests relief and the entry of judgments against both defendants as follows:

1. Compensatory damages against Defendant PMB Helin Donovan in the amount of $1,000,000
2. Compensatory damages against Defendant Chris Cardwell in the amount of $1,000,000
3. Compensatory damages against Donald McPhee in the amount of $1,000,000
4. Punitive damages against Defendant PMB Helin Donovan in the amount of $500,000
5. Punitive damages against Defendant Chris Cardwell in the amount of $500,000
6. Punitive damages against Defendant Donald McPhee in the amount of $500,000

KENNETH MACIORA V PMB HELIN DONOVAN, CHRISTIE CARDWELL AND DONALD MCPHEE – PLAINTIFF'S ORIGINAL COMPLAINT FOR SECURITIES FRAUD AND NEGLIGENCE - 18

RESPECTFULLY SUBMITTED.

Kenneth Maciora
72 Adelhaide Lane
East Islip, NY 11730
empirerelations@aol.com
(917) 670-9541

Sworn to and subscribed before me on this 24th day of February, 2016



Notary Public

My commission expires: _____

KENNETH MACIORA V PMB HELIN DONOVAN, CHRISTIE CARDWELL AND DONALD MCPHEE – PLAINTIFF'S ORIGINAL COMPLAINT FOR SECURITIES FRAUD AND NEGLIGENCE - 19