UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KENNETH MACIORA, <br><br>  Plaintiff, <br><br> v. <br><br> PMB HELIN DONOVAN LLP, *et al.*, <br><br>  Defendants. | Case No. C16-295-RSM <br><br> ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND GRANTING DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(c) |

## I.  INTRODUCTION

This matter comes before the Court on Defendants PMB Helin Donovan, LLP, Christie Cardwell and Donald McPhee's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(c), Dkt. #12, and Plaintiff Kenneth Maciora's Motion for Leave to File Second Amended Complaint, Dkt. #13. Defendants argue that Mr. Maciora's claims are frivolous and legally barred. Mr. Maciora opposes Defendants' Motion to Dismiss and moves to Amend his Complaint to add additional claims. Defendants oppose this Motion, arguing that these new claims are futile. For the reasons set forth below, the Court agrees with Defendants, DENIES Plaintiff's Motion to Amend, and GRANTS Defendants' Motion to Dismiss.

ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND GRANTING DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(c) - 1

## II.     BACKGROUND[1]

Plaintiff Kenneth Maciora brings this action against Defendants PMB Helin Donovan, LLP ("PMB"), Christie Cardwell and Donald McPhee under several causes of action related to securities fraud. Dkt. #2 at 19-26.

Defendant PMB was retained to audit the financial statements of a company called MyECheck prior to the filing of "Form 10" reports and financial statements as required by the Securities Exchange Act of 1934. *Id.* at ¶¶ 1, 12, 13, 15, 16. PMB partner Chris Cardwell was primarily responsible for MyECheck's audit. *Id.* at ¶ 8. PMB performed its audit and MyECheck caused the Form 10 and financial statements to be filed with the Securities and Exchange Commission ("SEC"). *Id.*

According to the Amended Complaint, in August 2015 a "former board member" for MyECheck informed PMB about alleged accounting errors contained within MyECheck's Form 10 and/or financial statements, including that the amount of outstanding shares reflected on the Form 10 was "understated by hundreds of millions of shares." *Id.* at ¶¶ 16, 22, 23, 33, 34.

Mr. Maciora alleges that he purchased 66,666,666 common stock share of MyECheck from Rod Zalunardo, a former employee of MyECheck. *Id.* at ¶ 28. The date of this purchase is not alleged. Since October 2015, Mr. Maciora has "repeatedly asked the transfer agent of MyECheck to print his stock certificate and include him on the Shareholder Registrar." *Id.* In October 2015 and November 2015, Mr. Maciora contacted the Defendants and requested that they cause the Form 10 that was filed with the SEC to be amended to reflect Zalunardo's ownership of MyECheck shares. *Id.* at ¶ 27.

---

[1] The following background facts are taken from Plaintiffs' First Amended Complaint, Dkt. #2, and accepted as true for purposes of ruling on these Motions.

ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND GRANTING DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(c) - 2

Mr. Maciora filed his first Complaint in this Court on February 25, 2016. Dkt. # 1. He filed his First Amended Complaint on March 17, 2016. Dkt. # 2. The First Amended Complaint lists the following claims: Violations of Section 17(a) of the Securities Act of 1933 and Section 10(b) and Rule 10b-5 of the Exchange Act of 1934; Aiding and Abetting MyECheck's Violations of Section 10(b) and Rule 10b-5 of the Exchange Act of 1934; Violation of Section 10A of the Exchange Act of 1934; Aiding and Abetting Violations of Section 13(a) of the Exchange Act and Exchange Act Rules 13a-1, 13a-13, and 12b-20; Aiding and Abetting Violations of Section 13(b) of the Exchange Act of 1934 and Securities Act Rule 13b2-1; and Negligence. Dkt. #2 at 19-26.

### III. DISCUSSION

#### A. Legal Standard

"After the pleadings are closed – but within such time as not to delay the trial – any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Analysis under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (citations and internal quotation marks omitted); *see also United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1053 (9th Cir. 2011). In making a Rule 12(b)(6) assessment, the court accepts all facts alleged in the complaint as true, and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted). However, the court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007)). The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. at 678. This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The complaint need not include detailed allegations, but it must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Absent facial plausibility, a plaintiff's claims must be dismissed. *Id*. at 570.

Pursuant to Fed. R. Civ. P. 15(a)(2), a "court should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2). Courts apply this policy with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). Five factors are commonly used to assess the propriety of granting leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether plaintiff has previously amended the complaint. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990); *Foman v. Davis*, 371 U.S. 178, 182 (1962). In conducting this five-factor analysis, the court must grant all inferences in favor of allowing amendment. *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999). In addition, the court must be mindful of the fact that, for each of these factors, the party opposing amendment has the burden of showing that amendment is not warranted. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987); *see also Richardson v. United States*, 841 F.2d 993, 999 (9th Cir. 1988).

**B. Motion to Dismiss Pursuant to Rule 12(c)**

**1. Whether there is a Private Cause of Action for Certain Statutory Claims**

Defendants argue that "there is no private right of action for: violation (sic) Section 17(a) of the Securities Act; violation of Section 10A of the Exchange Act; aiding and abetting

ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND GRANTING DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(c) - 4

securities fraud; and/or violation of SEC reporting requirements," because "[o]nly the SEC can bring such claims." Dkt. #12 at 2. Defendants argue that Mr. Maciora's second, third, fourth, and fifth claims, as well as part of his first claim, are thus precluded as a matter of law. *Id*. Defendants support this argument by citing, *inter alia*, *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 823 F.2d 1349, 1358 (9th Cir. 1987) (overruling prior cases and concluding "no private right of action lies under section 17(a)"); *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, NA.*, 511 U.S. 164, 191 (1994) (no private cause of action for aiding and abetting securities fraud under Section 10(b) or Rule 10b-5); *In re Penn Central Securities Litigation*, 494 F.2d 528, 540 (3rd Cir. 1974) (no direct or implied private cause of action for aiding and abetting violations of SEC mandatory reporting requirements set forth in Section 13(a) of the Exchange Act and/or related Rules 13a-1, 13a-13 and 12b-20); *Lewis v. Sporck*, 612 F.Supp. 1316, 1332-33 (N.D.Cal. 1985) (no private cause of action for violations of Section 13(b) of the Exchange Act or Rule 13b2-1). *Id.* at 8-9. Defendants argue that:

> …Section 10A of the Exchange Act, 15 U.S.C. § 78j-l, provides that certain reporting requirements may be triggered to inform the company and, in certain situations, the SEC, if an auditor becomes aware of an "illegal act" during the course of an audit. There is no private cause of action arising under 15 U.S.C. § 78j-1. *See* 15 U.S.C. § 78j-1(c); Pub. L. No. 104-67, § 203, 109 Stat. 737, 762 (1995) ("Nothing in this Act or the amendments made by this Act shall be deemed to create or ratify any implied private right of action...."). Enforcement for failure to "blow the whistle" lies exclusively with the SEC. *Id.*

*Id.* at 10.

With regard to Section 17(a), Mr. Maciora responds by arguing that "the Ninth Circuit has held on multiple occasions that a private cause of action exists under §17(a)," and that it is "telling that the United States Supreme Court has declined to confront the issue inferring that the decision is much closer to a debate than the Defendants would like this court to believe."

ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND GRANTING DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(c) - 5

Dkt. #24 at 11-12. Mr. Maciora cites to *Mosher v. Kane*, 784 F.2d 1385 (9th Cir.1986) and *Stephenson v. Calpine Conifers II, Ltd.*, 652 F.2d 808 (9th Cir.1981), as well as several out-of-circuit cases. *Id*. at 12. With regard to aiding and abetting securities fraud under Section 10(b) and Rule 10b-5, Mr. Maciora argues that finding no private cause of action for aiding and abetting Section 10(b) and Rule l0b-5 "makes no sense if the Defendants are found to be a primary violator of Section 10(b) and Rule 10b-5," and then appears to argue that because Defendants allegedly aided and abetted MyECheck in violating Section 10(b) and Rule 10b-5 they were themselves primary violators of these laws, and that "[i]t is important to note that courts including the Supreme Court have never ruled that a person can't be an aider and abettor of Section 10(b) and Rule 10b-5 of the Exchange Act if they also a primary violator." *Id*. at 12-13 (referring without proper citation to *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.,* 552 U.S. 148 (2008)). With regard to Section 10A of the Exchange Act, Plaintiff asks the Court to find a private cause of action exists under this section as a matter of first impression, referring to the *Cort v. Ash* four-part test to determine whether a federal statute creates a private cause of action. *Id*. at 15 (referring without proper citation to *Cort v. Ash,* 422 U.S. 66, 95 S. Ct. 2080, 2087, 45 L.Ed.2d 26 (1975)).

On Reply, Defendants argue that Mr. Maciora cites to bad law in support of his Section 17(a) claim because *Washington Pub. Power Supply* overruled *Mosher* and *Stephenson*, and because the out-of-circuit cases cited by Mr. Maciora were later overruled. Dkt. #25 at 8 (citing, *inter alia*, *Washington Pub. Power Supply*, 823 F.2d at 1358; *Finkel v. Stratton Corp.*, 962 F.2d 169, 175 (2nd Cir. 1992); *Schlifke v. Seafirst Corp.*, 866 F.2d 935, 942 (7th Cir. 1989)). Defendants reiterate that the Supreme Court has held that there is no private cause of action for aiding and abetting alleged violations of Section 10(b) or Rule 10b-5, and that "Mr.

ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND GRANTING DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(c) - 6

Maciora fails to identify any law to the contrary." *Id*. at 8-9 (again citing *Central Bank of Denver, N.A.*, *supra*). Defendants walk through the *Cort v. Ash* four-part test and argue that the Court should not create a private cause of action under Section 10A. *Id*. at 9-10. Defendants point out that Mr. Maciora failed to address their arguments to dismiss claims for aiding and abetting violations of Section 13(a), Section 13(b), and related rules 17 C.F.R. § 240.13a-1; 13a-13; 12b-20 and 13b2-1, and "thus concedes the point." *Id*. at 12.

The Court agrees with Defendants as to these claims. The case law is clear in the Ninth Circuit, and this Court will not deviate from controlling precedent. The Court finds that there is no private cause of action under Section 17(a) of the Securities Act. *See Washington Pub. Power Supply*, *supra*. The cases cited by Mr. Maciora for the opposite were subsequently overruled. The Court finds that there is no private cause of action for aiding and abetting violations of Section 10b or Rule 10b-5. *See Central Bank of Denver, N.A.*, *supra*; *Stoneridge Inv. Partners*, 552 U.S. at 162 ("[a]iding and abetting liability is [now] authorized in actions brought by the SEC but not by private parties."). The Court declines to create a private cause of action under Section 10A as contemplated by Mr. Maciora, agreeing with Defendants that the plain language of the statute indicates a clear intent to preclude a private cause of action. The Court finds that Mr. Maciora concedes that there is no private cause of action for aiding and abetting violations of Section 13a, Section 13b, and related rules 17 C.F.R. § 240.13a-1; 13a-13; 12b-20 and 13b2-1. Accordingly, Mr. Maciora's second, third, fourth, and fifth claims, as well as the part of his first claim alleging violations of Section 17(a), are precluded as a matter of law and will be dismissed.

**2. Fraud Claims under Section 10(b) and Rule 10b-5 of the Exchange Act**

ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND GRANTING DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(c) - 7

Section 10(b) of the Exchange Act of 1934, 15 U.S.C. § 78j(b), makes it unlawful "for any person… to use or employ, in connection with the purchase or sale of any security… any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe[.]" SEC Rule 10b-5, promulgated under the authority of section 10(b), in turn, provides:

> It shall be unlawful for any person…
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

Defendants argue that Mr. Maciora's claims for "understating the number of outstanding shares, misstating stockholder equity, and understating compensation expenses" all arise from PMB's alleged failure to amend the SEC filings to reflect Zalunardo's interest. Dkt. #12 at 6 (citing Dkt. #2 at ¶¶ 16-18, 22, 24, 26, 29, 32). Defendants argue that Mr. Maciora's security fraud claims—violations of Section 10b and Rule 10b-5 of the Exchange Act—fail to meet the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA") and Rule 9(b) by failing to plead with particularity facts that demonstrate PMB made any "materially false" statement with the "intent to defraud" and that Mr. Maciora "relied" on any such statement, resulting in damage. *Id*. at 2. Defendants cite to *In re Daou Sys., Inc.*, 411 F.3d 1006, 1014 (9th Cir. 2005) for the following five-part test: "(1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of

ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND GRANTING DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(c) - 8

a security, (4) transaction and loss causation, and (5) economic loss." *Id*. at 10. Defendants argue that the Amended Complaint indicates that Mr. Maciora bought the shares at issue prior to confronting PMB and demanding that the SEC filings be amended, and that "Mr. Maciora acquired his alleged shares in spite of, rather than because of, the alleged misrepresentations by PMB." *Id*. at 11. Defendants argue that "Mr. Maciora has not pled facts specifying how he was misled by the Form 10s and/or financial statements and/or why PMB would have attempted to mislead him." *Id.* at 12. Defendants argue that Mr. Maciora has not pled scienter facts with particularity. *Id*. at 12-13. Defendants argue that there are no facts in the Amended Complaint indicating that Mr. Maciora relied on PMB's audits in connection with his purchase of the shares or that PMB's audits are connected to Mr. Maciora's damages. *Id*. at 14-15.

In Response, Mr. Maciora argues that he "has more than met the pleading requirements of the PSLRA," and that the "apparently strict requirements" of Rule 9(b) should be relaxed in securities cases like this one "when factual information is peculiarly within the Defendants' knowledge or control," citing a case from the Third Circuit. Dkt. #24 at 7. Mr. Maciora argues that there is ample evidence of deception by the Defendants in this matter, referring (without citation to the Amended Complaint) to "several million dollars of real estate that is owned by MyECheck but is not on the balance sheet," sham revenue transactions that were created by fake contracts," and "hundreds of millions of shares representing millions in expenses that were never on the books." *Id*. at 8-9. With regard to materiality, Mr. Maciora argues that:

> Over $500,000 in wire transactions to real estate companies that were never properly accounted for or ignored more than easily meets the requirements for the second element. Add well over $1,000,000 in real estate owned by MyECheck's wholly owned subsidiary that is not on the balance sheet and the element of materiality is well satisfied. It is ludicrous that the Defendants argue that these issues are not material to support the underlying claims.

ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND GRANTING DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(c) - 9

*Id*. at 9 (emphasis omitted).  Mr. Maciora argues that "the element for the connection to sale of purchase of securities is met by the Plaintiffs purchase of the securities owned by Rod Zalunardo."  *Id*. at 9.  Mr. Maciora argues that the pleadings sufficiently establish scienter because "[w]ith all of these material omissions, the Defendants were reckless in their opinion or there is a very strong inference of scienter," however "the court shouldn't expect the Plaintiff to meet the almost unsurmountable (sic) task of getting the Defendants to conclude, 'OK, you got me.'"  *Id*. at 10.  Mr. Maciora argues that "[r]eliance is satisfied by the fact that the Plaintiff relied on the Defendants to enforce accounting based on general accepted accounting principles" and that "[t]hose principles would have required that the Defendants insist on the proper accounting entries which would not only have created an accounting entry for Zalunardo's stock but would also have insisted that a note to the financial statements reflected the issuance of the stock to Zalunardo and other management team members."  *Id*.

On Reply, Defendants argue that Mr. Maciora fails to identify any "material" misrepresentation by PMB and fails to plead facts with particularity showing intent to defraud.  Dkt. #24 at 2-4.  Defendants argue that "[i]t is undisputed that Mr. Maciora acquired his alleged interest in [MyECheck] knowing that neither [MyECheck]'s form 10, nor any of the other publically available financial statements indicated that Mr. Zalunardo had any shares to sell," and that therefore "it cannot be said that Mr. Maciora relied on PMB's allegedly false information when deciding to purchase the shares."  *Id.* at 4.

The Court finds that Mr. Maciora has not properly pled facts to support his fraud claims.  There are two problems with the Amended Complaint as drafted—first, the facts lack sufficient particularity as required by the PSLRA and Rule 9(b).  Although Mr. Maciora pleads very specific allegations of fraudulent activity, he does not plead with particularity a *material*

ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND GRANTING DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(c) - 10

misrepresentation or omission of fact communicated to him by Defendants in connection with the purchase of shares. He also does not plead scienter, causation, or economic loss with sufficient particularity. These problems could potentially be resolved by amendment. However, even if Mr. Maciora amended his pleadings to add this additional factual support for his fraud claims, there is a second, more fundamental problem—the facts as alleged show that Mr. Maciora bought shares in spite of, rather than because of, the alleged misrepresentations of Defendants. Mr. Maciora does not allege that PMB represented that Mr. Zalunardo had shares to sell, and that Mr. Maciora relied on this false representation causing damages. Instead, Mr. Maciora alleges that he bought Mr. Zalunardo's shares without any representations by PMB, and only after purchasing these shares contacted PMB to demand that his newly purchased shares be recognized. These facts, accepted as true, do not state a claim to relief that is "plausible on its face," nor can the Court draw the "reasonable inference" that these Defendants are liable for the alleged harm under fraud. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). The Court finds that the lack of a material misrepresentation or omission and lack of causation cannot be remedied by amendment without directly contradicting the existing pleadings, and that therefore these claims must be dismissed with prejudice.

       **3. Negligence Claim**

Mr. Maciora alleges that "[t]he Defendant's (sic) negligence harmed the Plaintiff by aiding and abetting the company in filing false financial statements with the [SEC] which created an atmosphere in which the public company failed to print stock certificates representing hundreds of millions of shares. In fact, 66,666,666 of these shares were shares that the Plaintiff purchased." Dkt. #2 at 26.

ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND GRANTING DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(c) - 11

Defendants argue that the Court should apply Washington state law for Mr. Maciora's negligence claim, and that because Mr. Maciora was not PMB's client, there was no duty of care. Dkt. #12 at 17-20. Defendants point out that Mr. Maciora "purchased the shares knowing (or turning a blind eye to the fact) that PMB had allegedly incorrectly audited the Form 10 and financial statements." *Id*. at 19. Defendants argue there are no pled facts to establish causation or the claimed damages. *Id.*

Mr. Maciora's Response argues that Section 552 of the Restatement (Second) of Torts should apply to this case, and that he is alleging third party negligence. Dkt. #24 at 16. Mr. Maciora argues that the Court should apply Texas state law. *Id*. at 17-18.

On Reply, Defendants argue that even if Texas law applied this claim would be precluded as a matter of law because of a lack of duty to Mr. Maciora. Dkt. #25 at 11. Defendants also point out the causation problem mentioned previously, arguing that "[*i*]*f only* Mr. Maciora had relied on the information audited by PMB he may not have acquired shares that Mr. Zalunardo did not have to sell." *Id*. Defendants go on to summarize this case thusly:

> Mr. Maciora expressly concedes that, rather than rely on PMB's audit, he was "relying on an accurate Form 10 because he told them and asked them to list Rod Zalunardo's stock and the Plaintiff told the Defendants that in multiple communications." Dkt. #24 at 18. In other words, he bought Mr. Zalunardo's shares knowing the SEC filings did not identify them, and hoped to strong arm PMB, either through threatening communications or the present litigation, into amending the Form 10 (which it cannot do) to reflect Mr. Zalunardo's shares (which do not exist).

*Id*. at 12.

The Court agrees with Defendants that the problem with Mr. Maciora's negligence claim is a fundamental one that would arise regardless of which state's law is applied. Section 552 of the Restatement (Second) of Torts contemplates liability for pecuniary loss caused by

ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND GRANTING DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(c) - 12

"justifiable reliance upon the information."  Under Washington or Texas law, regardless of whether a duty was owed to Mr. Maciora, the facts of this case simply do not support the claim that any negligent action by Defendants caused Mr. Maciora to purchase the shares from Mr. Zalunardo—the facts as pled can only support the conclusion that Mr. Maciora bought the shares without knowledge of or in spite of Defendants' audit of the Form 10 and financial statements.  These facts, accepted as true, do not state a claim to relief that is "plausible on its face," nor can the Court draw the "reasonable inference" that the Defendants are liable for the alleged harm under a theory of negligence.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Accordingly, this claim must be dismissed.

**C. Motion to Amend Complaint**

Pursuant to Rule 15(a)(2), a "court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Five factors are commonly assessed before granting leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether the party has previously amended the pleading.  *See Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990).  In conducting this five-factor analysis, the court must grant all inferences in favor of allowing amendment.  *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999).  In addition, the court must be mindful of the fact that, for each of these factors, the party opposing amendment has the burden of showing that amendment is not warranted.  *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987); *see also Richardson v. United States*, 841 F.2d 993, 999 (9th Cir. 1988).  Futility alone can justify a court's refusal to grant leave to amend.  *Novak v. United States*, 795 F.3d 1012, 1020, (9th Cir. 2015) (citing *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)).

ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND GRANTING DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(c) - 13

Mr. Maciora moves for leave to amend his Complaint a second time, acknowledging that this Motion was brought in the shadow of the Motion to Dismiss and alleging that this amendment "should resolve any doubt as to whether dismissal may be warranted." Dkt. #13 at 2. Mr. Maciora argues that this amendment is not made in bad faith and does not cause undue delay or prejudice to Defendants. *Id*. at 3. Mr. Maciora fails to set forth the changes being made in this proposed amendment. Upon review of the attached Proposed Second Amended Complaint, the Court concludes that it contains the claims dismissed above for lack of a private cause of action. *See* Dkt. #13-2 at 17-29.[2] The portion of Mr. Maciora's first cause of action for violation of Section 10(b) and Rule 10b-5 of the Exchange Act of 1934 is identical to that in the previous Amended Complaint, *see* Dkt. #2 at 18-19; Dkt. #13-2 at 17-18, and the proposed cause of action for negligence is also identical, *see* Dkt. #2 at 24-26; Dkt. #13-2 at 21-22. The Proposed Second Amended Complaint adds causes of action seven through eleven for "aiding and abetting money laundering," "aiding and abetting wire fraud," "aiding and abetting breach of fiduciary responsibility," "aiding and abetting fraud," and for "violations of Title 3, Section 10A of the Securities Litigation Reform Act of 1995." Dkt. #13-2 at 22-29.

In Response, Defendants argue that the proposed Second Amended Complaint "asserts new futile claims, fails to support his previously asserted frivolous claims, and… was clearly filed for no other purpose than to counteract [Defendants'] pending Motion to Dismiss." Dkt. #17 at 5. First, Defendants argue that the Court should "deny leave to amend to add claims for which there is no private cause of action," specifically "aiding and abetting securities fraud, aiding and abetting SEC reporting requirements, violation of Section 17(a) of the Securities

---

[2] The Court notes that although Mr. Maciora has attached a copy of the proposed Second Amended Complaint to his Motion, he has not indicated in the attachment how it differs from the prior pleading "by bracketing or striking through the text to be deleted and underlining or highlighting the text to be added" as required by Local Rule 15. However, the Court has been able to review the proposed pleading and will not require further action to correct this mistake from Mr. Maciora.

ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND GRANTING DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(c) - 14

Act, or violation of Section 10A of the Exchange Act." *Id*. at 6.  Defendants argue that the proposed amendment fails to support a claim for securities fraud because it fails to identify any material misrepresentation by Defendants or that Mr. Maciora relied upon Defendants' audit when deciding to acquire the alleged shares, i.e. "[t]here are no facts demonstrating a 'causal connection between the fraud and the securities transaction in question.'" *Id*. at 7 (citing *In re Daou Sys., Inc.*, 411 F.3d at 1025).  The Defendants next address the new claims.  Defendants argue that there is no private cause of action for wire fraud.  *Id*. at 9 (citing *Wisdom v. First Midwest Bank of Poplar Bluff*, 167 F.3d 402, 408 (8th Cir. 1999); *Ateser v. Bopp*, 29 F.3d 630 (9th Cir. 1994)).  Defendants argue that there is no private cause of action for money laundering.  *Id*. (citing, *inter alia*, 18 U.S.C. §1956; *El Camino Resources, LTD v. Huntington Nat. Bank*, 722 F.Supp.2d 875 (W.D. Mich. 2010).  Defendants acknowledge that there may be a cause of action for aiding and abetting breach of fiduciary duty or fraud under Washington law.  *Id*. at 11 (citing *In re Consol. Meridian Funds*, 485 B.R. 604, 616 (Bankr. W.D. Wash. 2013); *Brashkis v. Hyperion Capital Grp., LLC*, No. 3:11-cv-05635 RBL, 2011 WL 6130787 at *3 (W.D. Wash. Dec. 8, 2011)).  Defendants argue that Mr. Maciora has nonetheless failed to allege facts suggesting that Defendants knew of the alleged breach of fiduciary duty or fraud, or pled the fraud facts with particularity.  *Id*.  Defendants argue that Mr. Maciora fails to identify any "agreement and concerted action among [Defendants and MyECheck] to commit any alleged fraud."  *Id*. at 12 (citing *Brashkis*, 2011 WL 6130787 at * 3).  Defendants argue that "[o]ther than merely stating in conclusory terms that [Defendants] 'knew' or 'had to know' that the transactions were inappropriate, Mr. Maciora fails to plead any facts suggesting that [Defendants] was aware that the transactions were illicit and/or how [Defendants] aided or assisted in making the transactions."  *Id*.  Defendants argue that if the alleged breaches of

ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND GRANTING DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(c) - 15

fiduciary duty and fraud took place, according to the Complaint they took place more than a year before Defendants were engaged to perform an audit and more than a year before Mr. Maciora allegedly purchased the shares at issue, and thus Mr. Maciora's conclusory allegations of aiding and abetting and causation of harm are insufficient, *i.e.* "there is no basis for any claim that [Mr. Maciora] was somehow damaged by [MyECheck's] alleged illicit transactions and/or [Defendants'] alleged failure to identify them." *Id*. Defendants fail to directly address Mr. Maciora's eleventh cause of action for "violations of Title 3, Section 10A of the Securities Litigation Reform Act of 1995."

On Reply, Mr. Maciora repeats the same arguments he made in opposition to the Motion to Dismiss to argue that the amendment is not futile.[3] With regard to the materiality requirement of his claims of securities fraud under Section 10b and Rule 10b(5) of the Exchange Act, Mr. Maciora argues:

> Over $500,000 in wire transactions to real estate companies that were never properly accounted for or ignored more than easily meets the requirements for the second element. Add well over $1,000,000 in real estate owned by MyECheck's wholly owned subsidiary that is not on the balance sheet and the element of materiality is well satisfied. It is ludicrous that the Defendants argue that these issues are not material to support the underlying claims.

Dkt. #20 at 4 (emphasis omitted). This exact language has been addressed previously in this Order. Mr. Maciora argues that "[t]he element for the connection to sale of purchase of securities is met by the Plaintiffs purchase of the securities owned by Rod Zalunardo." *Id*. Again, this is identical to Mr. Maciora's argument in opposition to the Motion to Dismiss and

---

[3] The Court notes that Mr. Maciora's Reply is 16 pages long, well in excess of the 6-page limit allowed for a Reply to a Motion of this kind. *See* LCR 7(e)(4). Mr. Maciora did not request leave from the Court to file this grossly over-length brief. Defendants properly filed a Surreply notifying the Court of this issue and of the fact that Mr. Maciora raises a new claim in his Reply that was not part of the proposed Second Amended Complaint. *See* Dkt. ## 22, 23. The Court finds that Mr. Maciora has failed to comply with the local rule on page limits and improperly raises a new claim. Accordingly, the Court will only consider the first six pages of Mr. Maciora's Reply and will disregard the new claim.

ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND GRANTING DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(c) - 16

has been addressed previously. Mr. Maciora proceeds to repeat verbatim arguments found in Mr. Maciora's Opposition to the Motion to Dismiss in support of his other claims, including his claim for negligence. *See, e.g., id.* at 6.

The Court finds that there is no undue delay or prejudice in the filing of this Amended Complaint. While the Court finds the timing and lack of analysis in Plaintiff's Motion indicative of a procedural (rather than substantive) opposition to Defendants' Motion to Dismiss, this does not rise to the level of bad faith in the Court's opinion. The Court notes that this is not Mr. Maciora's first attempt at amending his Complaint. However, the Court concludes that the key question before it is one of futility, and will address Mr. Maciora's causes of action in turn.

First, the Court has already concluded that there is no private cause of action for aiding and abetting securities fraud, aiding and abetting SEC reporting requirements, violation of Section 17(a) of the Securities Act, or violation of Section 10A of the Exchange Act. Mr. Maciora's amendment of these claims is thus futile.

Second, the Court agrees with Defendants that the Proposed Second Amended Complaint fails to include any new factual allegations that could show material misrepresentation by Defendants or that Mr. Maciora relied upon Defendants audit when deciding to acquire the alleged shares. The new proposed cause of action for violation of Section 10(b) and Rule 10b-5 of the Exchange Act of 1934 is identical to the previous cause of action, and again fails to state with particularity what misrepresentations were made and how they caused Mr. Maciora injury. It is not enough to simply allege new misrepresentations and repeat that Mr. Maciora purchased the shares at issue, Mr. Maciora must actually connect the dots and state a claim to relief that is "plausible on its face," allowing the Court to draw the

ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND GRANTING DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(c) - 17

"reasonable inference" that the Defendants are liable for the alleged fraud. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). The Court thus concludes that the proposed amendment of this claim is futile.

Third, the Court finds that the new proposed cause of action for negligence is identical to that in the Amended Complaint. Although Mr. Maciora sets forth additional facts in his Proposed Second Amended Complaint, he fails to connect these facts to his claim, which is essentially identical. As such, the Court concludes that this amendment is futile.

Finally, the Court will address the newly added claims. The Court agrees with Defendants that there is no private cause of action for wire fraud or money laundering. *See Wisdom*, 167 F.3d at 408; 18 U.S.C. §1956. Even if there were, the Proposed Second Amended Complaint fails to allege how the alleged wire fraud or money laundering harmed Mr. Maciora. *See* Dkt. #13-2 at 22-25. To the extent that a private cause of action exists for aiding and abetting breach of fiduciary duty or fraud, Mr. Maciora's conclusory claims fail for lack of particularity and for the irreparable causation issues identified by Defendants, *e.g.* the factual events giving rise to Mr. Maciora's claims of aiding and abetting breach of fiduciary duty or fraud are alleged to have taken place well before Mr. Maciora allegedly purchased the shares at issue. The Court concludes that these claims are not plausible on their face and are thus futile.

Mr. Maciora's final claim is for "violations of Title 3, Section 10A of the Securities Litigation Reform Act of 1995." The Court has been unable to find any instance where Title III of the PSLRA has given rise to a private cause of action. This title requires auditors to investigate potential illegal activity and to "inform the appropriate level of the management of the issuer and assure that the audit committee of the issuer, or the board of directors of the issuer in the absence of such a committee, is adequately informed with respect to illegal acts

ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND GRANTING DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(c) - 18

that have been detected or have otherwise come to the attention of such accountant in the course of the audit, unless the illegal act is clearly inconsequential." Section 10A (b)(1)(B), 109 Stat. 737, 763.  If there is a failure to take remedial action, Section 10A requires auditors to "directly reports its conclusions to the board of directors."  Section 10A goes on to limit liability in a private action and provide for civil penalties to be imposed by the SEC.  Section 10A (c)-(e), 109 Stat. 737, 764.  On its face, this statute does not appear to allow for a private cause of action.  Indeed, Title III of the PSLRA amends Section 10A of the Exchange Act, 15 U.S.C. § 78j-l, which the Court has already found does not give rise to a cause of action.  Even if there was a private cause of action, Mr. Maciora fails to allege how Defendants' alleged violation caused him harm, and the Court finds that amendment to add this claim is futile for the same lack of causation as previously identified.

## IV. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

1) Defendants PMB Helin Donovan, LLP, Christie Cardwell and Donald McPhee's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(c), (Dkt. #12), is GRANTED. Plaintiff Kenneth Maciora's claims are dismissed in their entirety with prejudice.

2) Plaintiff Kenneth Maciora's Motion for Leave to File Second Amended Complaint, (Dkt. #13), is DENIED.

DATED this 20th day of July 2016.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND GRANTING DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(c) - 19